

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA.

2021 MAR 19 P 3:36

AROL L. MICHEL
CLERK

**21-28**

**SECT. R MAG. 5**

**SEALED FELONY**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

### INDICTMENT FOR BANK FRAUD, MAKING AND SUBSCRIBING FALSE TAX RETURNS, MAKING FALSE STATEMENTS TO FEDERAL AGENTS, AND NOTICE OF FORFEITURE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. |
| v. | * | SECTION: |
| KAREN FARRELL TIGLER | * | VIOLATIONS: 18 U.S.C. § 1001(a)(2) |
| | | 18 U.S.C. § 1344(2) |
| | * | 26 U.S.C. § 7206(1) |
| * | * | * |

The Grand Jury charges that:

## COUNTS 1-9
## BANK FRAUD

**A.  AT ALL MATERIAL TIMES HEREIN:**

1.  On or about January 1, 2013, to on or about November 14, 2016, **KAREN FARRELL TIGLER** ("**TIGLER**") was employed as a multi-service banker with Hancock Whitney or Whitney Bank ("Whitney").

2.  **TIGLER** worked at the Whitney branch, also known as the "Morgan State Branch," located at 430 Chartres Street, New Orleans, Louisiana.

✓ Fee USA
___ Process
X Dktd
___ CtRmDep
___ Doc.No.

3. Whitney's deposits were insured by the Federal Deposit Insurance Corporation ("FDIC").

4. Whitney teller transactions involving cashed checks were batched and transmitted to Whitney's imaging center in Little Rock, Arkansas for review and processing. The processed transactions were then transmitted to Whitney's banking system located in Gulfport, Mississippi.

5. A counter check was a check that one obtained from the bank branch and used to complete a banking transaction.

6. Client A was in her mid-80s in 2015 and 2016.

7. Client A lived in Iberia Parish since Hurricane Katrina struck Louisiana in 2005.

8. M. L. was Client A's primary caregiver.

9. L. R. was a caretaker for Client A.

10. Client A owned a residence in the French Quarter located in New Orleans, Louisiana.

11. Y. J. was Client A's housekeeper who took care of Client A's French Quarter property.

12. E. H. was a general contractor who did work on Client A's French Quarter property.

13. Client A was a banking customer of Whitney and maintained account x4975 with Whitney.

14. From on or about February 9, 2015, to on or about October 28, 2016, approximately 100 counter checks totaling approximately $349,556 were processed and debited without permission or authorization, from Client A's Whitney account.

15. **TIGLER** reported W-2 income from Whitney in the approximate amount of $21,290 for the tax year 2015 and approximately $19,256 for the tax year 2016.

16.     **TIGLER** maintained the following bank accounts: Regions Bank ("Regions") checking account x1987; Regions savings account x9014; JP Morgan Chase ("Chase") savings account x6598; Jefferson Financial Federal Credit Union ("JFFCU") savings account x6300; and ASI Federal Credit Union ("ASI") savings account x1150.

17.     **TIGLER** maintained the following joint bank accounts: ASI savings account x0500; Chase savings account x1569; and Capital One checking account x7508.

18.     **TIGLER** was issued Chase credit card account x6610.

**B.**    **THE SCHEME AND ARTIFICE TO DEFRAUD:**

It was part of the scheme and artifice to defraud that **TIGLER** used her position with Whitney to embezzle approximately $349,556 from Client A's Whitney account.

It was further a part of the scheme and artifice to defraud that **TIGLER** fraudulently utilized approximately 100 Whitney counter checks to debit funds from Client A's account.

It was further a part of the scheme and artifice to defraud that **TIGLER** used her position with the bank to access personal information from other legitimate banking transactions to create the fraudulent counter checks.

It was further a part of the scheme and artifice to defraud that **TIGLER** made false representations to financial institutions when she fraudulently completed counter checks drawn on Client A's account.

It was further a part of the scheme and artifice to defraud that **TIGLER** forged the signatures of Client A and E. H., L. R., M. L., and Y. J. on the counter checks in an effort to conceal her embezzlement scheme.

It was further a part of the scheme and artifice to defraud that **TIGLER** accessed or utilized legitimate checks drawn on Client A's account in order to prepare fraudulent counter checks.

It was further a part of the scheme and artifice to defraud that **TIGLER** cashed approximately 21 counter checks totaling approximately $73,924 that were supposedly for "roofing," "market/garden work," "light fixtures/cleaning," "extras plumbing," "misc. work," "renovations," and "maintenance."

It was further a part of the scheme and artifice to defraud that **TIGLER** cashed approximately 79 counter checks totaling approximately $ 275,632 payable to Y. J. that were supposedly for "house," "maintenance," and for "happy birthday."

It was further a part of the scheme and artifice to defraud that **TIGLER** falsely claimed to have received verbal approval from Client A to cash the Whitney counter checks.

It was further a part of the scheme and artifice to defraud that **TIGLER** failed to report approximately $134,429 on her 2015 Form 1040 Federal Income Tax Return in an effort to conceal her embezzlement scheme.

It was further a part of the scheme and artifice to defraud that **TIGLER** failed to report approximately $215,127 on her 2016 Form 1040 Federal Income Tax Return in an effort to conceal her embezzlement scheme.

It was further a part of the scheme and artifice to defraud that **TIGLER** spread the deposits of cash of embezzled funds into her various accounts.

It was further a part of the scheme and artifice to defraud that **TIGLER** failed to report gambling winnings of approximately $32,180 on her 2015 Form 1040 Federal Income Tax Return.

It was further a part of the scheme and artifice to defraud that, when confronted by a relative of Client A, **TIGLER**, falsely implicated Y. J. in an effort to conceal her embezzlement of funds from Client A's account.

It was further a part of the scheme and artifice to defraud that, on or about November 28, 2016, **TIGLER** lied to special agents with the Federal Bureau of Investigation ("FBI") in an effort to conceal her embezzlement of funds from Client A's Whitney account.

## C.   THE OFFENSE:

On or about the dates and in the approximate amounts listed below, in the Eastern District of Louisiana and elsewhere, the defendant, **KAREN FARRELL TIGLER**, for the purpose of executing the scheme and artifice to defraud set forth in Part B, knowingly defrauded the financial institution, Whitney Bank, the deposits of which were insured by the FDIC, and to obtain monies, funds, credits, and assets owned by and under the custody and control of the Whitney Bank by means of false and fraudulent pretenses, representations, and promises when defendant withdrew money at the Morgan State Branch by forging counter checks drawn on the account of Client A. (The below are a representative sample of the 100 transactions)

| COUNT | DATE | AMOUNT | PAYEE FORGED SIGNATURE |
|---|---|---|---|
| 1 | 05/26/2015 | $3,645.92 | E.H. |
| 2 | 11/18/2015 | $6,745.00 | L.R. |
| 3 | 11/23/2015 | $6,745.00 | L.R. |
| 4 | 03/01/2016 | $4,000.00 | M.L. |
| 5 | 04/01/2016 | $4,000.00 | M.L. |
| 6 | 04/15/2016 | $4,000.00 | M.L. |
| 7 | 06/27/2016 | $3,820.00 | Y.J. |
| 8 | 08/04/2016 | $3,755.00 | Y.J. |
| 9 | 09/13/2016 | $3,500.00 | M.L. |

All in violation of Title 18, United States Code, Section 1344(2).

## COUNT 10
## MAKING AND SUBSCRIBING A FALSE TAX RETURN

A.  The allegations contained in Parts A and B of Counts 1 through 9 are hereby re-alleged and incorporated herein by reference.

B.  On or about February 12, 2016, in the Eastern District of Louisiana, **KAREN FARRELL TIGLER**, a resident of Harvey, Louisiana, did willfully make and subscribe a 2015 Form 1040 Federal Income Tax Return, which was verified by a written declaration that it was made under the penalties of perjury and which **TIGLER** did not believe to be true and correct as to every material matter. That the 2015 Form 1040 Federal Income Tax Return, which was filed with the Internal Revenue Service, stated she had total income of $15,117, whereas, as she then and there knew failed to contain approximately $166,609 in unreported income.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT 11
## MAKING AND SUBSCRIBING A FALSE TAX RETURN

A.  The allegations contained in Parts A and B of Counts 1 through 9 are hereby re-alleged and incorporated herein by reference.

B.  On or about February 19, 2017, in the Eastern District of Louisiana, **KAREN FARRELL TIGLER**, a resident of Harvey, Louisiana, did willfully make and subscribe a 2016 Form 1040 Federal Income Tax Return, which was verified by a written declaration that it was made under the penalties of perjury and which **TIGLER** did not believe to be true and correct as to every material matter. That the 2016 Form 1040 Federal Income Tax Return, which was filed with the Internal Revenue Service, stated she had total income of $27,831, whereas, as she then and there knew failed to contain approximately $215,127 in unreported income.

In violation of Title 26, United States Code, Section 7206(1).

## COUNT 12
## MAKING FALSE STATEMENTS TO FEDERAL AGENTS

A.   **AT ALL TIMES MATERIAL HEREIN:**

The allegations contained in Parts A and B of Counts 1 through 9 are hereby re-alleged and incorporated herein by reference.

B.   **THE OFFENSE:**

On or about November 28, 2016, in the Eastern District of Louisiana, defendant **KAREN FARRELL TIGLER**, did willfully and knowingly make materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, when she told special agents with the FBI she received authorization from Client A every time prior to cashing a counter check drawn on Client A's account. The statements and representations were false because **TIGLER** then and there knew that she had not received authorization from Client A to cash counter checks drawn on Client A's Whitney account.

In violation of Title 18, United States Code, Section 1001(a)(2).

## NOTICE OF FORFEITURE

1.   The allegations of Counts 1 through 12 of this Indictment are incorporated by reference as though set forth fully herein for the purpose of alleging forfeiture to the United States.

2.   As a result of the offenses alleged in Counts 1 through 11, the defendant, **KAREN FARRELL TIGLER**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(2)(A), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation(s).

3.   If any of the above-described property, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third person;

    c.    has been placed beyond the jurisdiction of the Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be subdivided without difficulty;

the United States shall seek a money judgment and, pursuant to Title 21, United States Code, Section 853(p), forfeiture of any other property of the defendant up to the value of said property.

A TRUE BILL:

███████████████

FOREPERSON

DUANE A. EVANS
UNITED STATES ATTORNEY

*[signature]*

BRIAN M. KLEBBA
MARIA M. CARBONI
Assistant United States Attorneys

New Orleans, Louisiana
March 19, 2021

8

FORM OBD-34

No. _____

# UNITED STATES DISTRICT COURT

Eastern _____ District of _____ Louisiana

_____ Criminal _____ Division

## THE UNITED STATES OF AMERICA

vs.

KAREN FARRELL TIGLER

# INDICTMENT

INDICTMENT FOR BANK FRAUD, MAKING AND SUBSCRIBING FALSE TAX RETURNS, MAKING FALSE STATEMENTS TO FEDERAL AGENTS, AND NOTICE OF FORFEITURE

VIOLATIONS: 18 U.S.C. § 1001(a)(2)
18 U.S.C. § 1344(2)
26 U.S.C. § 7206(1)

Filed in open court this _____ day of _____ A.D.
2021.

_____ Clerk

Bail, $ _____

BRIAN M. KLEBBA
Assistant United States Attorney